The Supreme Court reversed the judgment of the Common Pleas on April 13th, 1885, in the following opinion, per
Clark, J.
If the plaintiff had any right to recover in this case, it was certainly upon the footing of the contract made by Spence, as the agent of Colt, with, the Allentown School District. We find no evidence whatever which would justify a submission to the jury upon any other ground. When Mr. McConn first came to Allentown he came at the instance of Sidney, the architect, he brought with him and delivered to Mr. Hunk, the President of the Board of School Directors, the letter of 3d February, 1872, from Mr. Sidney. In that letter Sidney stated, very explicitly, that if McConn did anything toward changing the heating apparatus, it was to be done at the expense of Colt. An agreement, signed by Colt, was enclosed, and was as follows: “I hereby authorize J. C. Sidney to employ a suitable person to make such changes and alterations in the heating apparatus, now in the school building of the Sixth Ward, Allentown, Pa., as he may deem necessary, aid work, and all materials, to be done at my expense, and to be deducted from the amount to be paid me by the Board of Control, or, in case they do not pay it, I will do so. In no case is any responsibility taken from me on account of said contract, in 'case of the heater not being made satisfactory by the party so employed by J. C. Sidney. (Signed,) A. P. Colt.”
Mr. Hunk testifies, that, at the first interview, 'he read the letter and agreement to McConn ; told him of the contract with Colt & Spence; that Colt had failed to carry it out, and that if McConn wanted permission to go into the building under Colt’s direction he could do so, but that the School District would in no manner be responsible for any work he might do. He states most explicitly that he did not at any time authorize McConn to do any work for, or on account of, the district, or assume any responsibility whatsoever. The board, it is true, provided for *90 the erection of two supply tanks, with the necessary pipes and attachments, but these were purchased and were afterwards paid for by the district. They are not involved in this controversy.
The plaintiff, MeConn, does not deny the statement of Runk. He says he delivered the letter which enclosed Colt’s agreement; that it was opened in his presence, “and that was the first he knew of it.” Upon his cross-examination he testified as follows: “Q. Did not Mr. Runk. say what Sidney had said, and read you that paper that had Mr. Colt’s name on it in the office ?” “A. I do not remember; he may have done it.”
“Q. Did not Mr. Runk say to you then that the School District would assume no responsibility at al-1, but that, if you wanted to go on for Mr. Colt and complete his contract, they would not interfere ?” “A. I cannot remember those sentences• he may have said those words, but I do not remember; I have no-doubt that if Mr. Runk says so he has done it.”
There is no evidence that the work was done under the direction of the School Board. Sidney, it is true, was the architect, but there is not the slightest proof that he had authority to bind the board by contract, or for work which might be done by his direction, independently of the already existing contract under which his duties were defined. The materials were to be furnished and the work done, subject to his approval. He was designated to judge between the parties as to the proper performance of the contract as it was written, with no power to change its conditions or alter its terms. He was, therefore, as the architect, no more the agent of one party than of the other; he was an arbiter between them. •
MeConn does not pretend to say in his examination that he was employed by, or had any direct contract' with, the board. He says that whatever he did was done- by direction of Sidney. “The first and the last,” ha, says, “was done under Sidney ; I knew no other man than Sidney.” The validity of his claim against the district, therefore, apart from his rights under the Colt contract, depends upon the alleged agency of Sidney, of which we have said there is not the slightest proof.
It is very clear, on the contrary, that all of the parties to this transaction thoroughly understood their relations to each other. *91 ■The officers of thé School District adhered to their contract with Colt, but condemned the work ; permitted McConn to proceed under Colt’s direction, but refused to assume any responsibility. Colt admitted the failure of the apparatus he had provided, and authorized Sidney to employ some suitable person to make such changes as he might deem necessary. Sidney employed McConn, and McConn, notwithstanding the refusal of' the district to assume responsibility, went on with the work. He opened an account in his books, in exact accordance with the true nature of the transaction; he charged the various items in the form following:
Philadelphia, April, 1872. ■
Sixth Ward School, Allentown.
A. P. Colt, per order of <T. C. Sidney, Agt.,
1872. To John McConn, Dr.
Peb’y 5, To fare, board, &c., &c., - . - $13.25
The several items charged in this account amount in the aggregate to $1,715.86, and a certificate of Sidney, the architect, is appended as follows: “I certify this bill to be correct, and request the Board of Controllers to pay Mr. McConn the amount, as directed in the order of Mr. Colt. (Signed,) J. O. Sidney.”
What was said and what was done plainly indicate that all had a uniform and perfect understanding of their relative rights and responsibilities. Upon this -branch of the case there is -no conflict in the evidence ; no contradiction of the witnesses ; the testimony is uniform and consistent. Upon what considerations the jury may have arrived at the verdict we cannot, of course, know, and this is the difficulty in this case. It is clear, however,. that there was no evidence of any responsibility upon the .part of the School District, outside of the contract with Colt & Spence. McConn’s right to recover against the defendants on the evidence before us, must be determined upon the considerations applicable were the suit brought' by Colt. If nothing more can be shown, it would seem, therefore, that, for the protection of the district, and to justify a recovery, the record should be made to conform to this character of claim.
We are of opinion that the second and third assignments of error are sustained. The judgment is therefore reversed, and ‡ venire facias de novo awarded.